UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| MARGARITO CANALES, and<br>BENJAMIN BARDZIK,<br><br>　　　　　　　Plaintiffs<br><br>v.<br><br>LEPAGE BAKERIES PARK STREET LLC,<br>CK SALES CO., LLC and<br>FLOWER FOODS, INC.,<br><br>　　　　　　　Defendants | CIVIL ACTION NO.:  1:21-CV-40065 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, COMPEL ARBITRATION**

**Introduction**

Plaintiffs Margarito Canales and Benjamin Bardzik ("Mr. Canales and Mr. Bardzik" or "Plaintiffs") hereby submit their opposition to Defendants' Motion to Dismiss or, in the Alternative, Compel Arbitration.  This case arises from a sophisticated, carefully coordinated scheme used by Defendants Lepage Bakeries Park Street LLC, CK Sales, Co., LLC and Flowers Foods, Inc. ("Defendants") to misclassify Plaintiffs as independent contractors rather than employees and thereby avoid compliance with the Massachusetts Wage Act, M.G.L. c. 149 § 148.  As part of that scheme, Defendants required Plaintiffs to establish their own corporate entity, T&B Dough Boys, Inc.  The arbitration provision upon which Defendants now invoke was a component of lengthy, complex contracts Defendants required Plaintiffs' *corporate entity* to sign.  Because Plaintiffs were not parties to that contract, they cannot be bound by it.  Moreover, the contracts (including the arbitration provisions in them) constitute impermissible "special contracts" under

the Massachusetts Wage Act and are otherwise invalid under Massachusetts law. Finally, because Plaintiffs qualify as transportation workers for purposes of the Federal Arbitration Act's exemption, the FAA cannot be invoked to compel them to arbitrate.

**Statement of Facts[1]**

Defendant Flowers Foods is a parent holding company for several corporate entities, including the other two Defendants in this case, which produce and sell baked goods throughout the New England region. To facilitate distribution of their goods, Defendants frequently employ individual delivery drivers, who are assigned to deliver goods to stores along pre-determined routes. For a period of time Defendants employed Mr. Canales and Mr. Bardzik were employed as individual delivery drivers, classified them as employees, and compensated them through a combination of a flat rate and commission payments.

In or around late 2017, Defendants approached Plaintiffs and informed them that, if they wished to continue their employment, they were required to establish a corporate entity, which would need to purchase distribution rights for specific delivery routes from Defendants. Defendants provided Mr. Canales and Mr. Bardzik with instructions telling them specifically what sort of corporate entity to create. Defendants also required that the corporate entity ("T&B") enter into "Distributor Agreements," which documents Defendants drafted and supplied to T&B with no input or discussion from T&B.[2]

The entire premise of the Distributor Agreement depends on and assumes that Plaintiffs are independent business owners of T&B, which is the "Distributor," rather than employees subject

---

[1] Plaintiffs refer to and incorporate the factual allegations set forth in the Complaint in this matter as well as the facts set forth in the Affidavits of Margarito Canales and Benjamin Bardzik submitted here.

[2] The Defendants required T&B to execute a Distributor Agreement for each "route" for which distribution rights were being purchased. In this case, T&B executed four of them – all of them containing identical provisions.

to Defendants' direction and control.  Yet in reality the creation of Plaintiffs' corporate entity, together with the Distributor Agreements, was merely a veneer and the Defendants have continued to treat Mr. Canales and Mr. Bardzik as employees in all meaningful respects.  Defendants have retained the ability to supervise and discipline Plaintiffs; have required Plaintiffs to comply with their policies and procedures in all respects; and have exercised control over Plaintiffs' work schedules.  They have prohibited Plaintiffs from exercising independent business judgment and have retained control over the delivery routes for which T&B supposedly purchased distribution rights.

As a direct and inevitable result of the misclassification scheme, the Defendants have failed to pay the Plaintiffs earned wages to which they are entitled in violation of the Massachusetts Wage Act.  The Defendants now seek to compel arbitration concerning their liability for misclassifying the Plaintiffs by attempting to enforce the illegitimate contractual arrangements they required T&B to make.  For the reasons given below, the Court should deny their motion in its entirety.

## Standard of Review

[B]efore the [Federal Arbitration] Act's heavy hand … swings into play, the parties themselves must agree to have their disputes arbitrated." Landry v. Transworld Sys. Inc., 485 Mass. 334, 338 (2020) (internal citations omitted); see also Tissera v. NRT New Eng., 438 F. Supp. 3d 115, 121 (D. Mass. 2020).  Arbitration should be ordered "*only* where the court is satisfied that neither … the formation of the parties' arbitration agreement nor … its enforceability or applicability to the dispute is in issue." Bossé v. New York Life Ins. Co., 992 F.3d 20, 28 (1st Cir. 2021) (emphasis added); see also Granite Rock Co. v. International Bhd. of Teamsters, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is

3

satisfied that the parties agreed to arbitrate *that dispute*.") (emphasis in original).  Where a "motion to compel arbitration [is] made in connection with a motion to dismiss or stay," the court "draw[s] relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration." Waithaka v. Amazon.com, Inc., 966 F.3d 10, 13 n.2 (1st Cir. 2020) (internal citations omitted).  "In evaluating a motion to compel arbitration, the judge must take the allegations in the plaintiff's complaint as true." Ferrier v. Comcast Corp., 99 Mass. App. Ct. 1101 (2020) (citing Dartmouth v. Greater New Bedford Regional Vocational Tech. High Sch., 461 Mass. 366, 373-374 (2012).  "[A]rbitration is a matter of contract [and] not something to be foisted on the parties at all costs." Landry 485 Mass. at 338 (internal citations and quotation marks omitted).  State contract law principles govern determinations of the validity of a contract. Bekele v. Lyft, Inc., 918 F.3d 181, 185 (1st Cir. 2019).

## Argument

**I. Defendants cannot enforce the Distributor Agreements against Plaintiffs because they were not parties to the agreements in their individual capacities.**

*a. The Distributor Agreements were made between two corporate entities, and Plaintiffs were not parties to them in their individual capacities.*

The Distributor Agreements upon which Defendants rely were signed by Mr. Canales only, and only on behalf of T&B.  The Distributor Agreements provide in relevant part that:

> This Distributor Agreement ("Agreement") is made effective the 8th day of July, 2019, by and between *CK SALES CO., LLC*, with its office and principal place of business at 11 Adamian Drive Auburn, ME. 04210 ("COMPANY"), and *T & B Dough Boys Inc*, a Massachusetts corporation, with its principal place of business at 46 Blossom Street Apt 1 Chelsea, MA 02150 ("DISTRIBUTOR").

Linthicum Decl. p. 3 (emphasis added).

The agreement clearly and specifically applies to two corporate entities, CK Sales Co., LLC, and T&B Dough Boys, Inc. identified separately as "Company" and "Distributor."  T&B is a domestic

4

profit corporation formed under M.G.L. c. 156D. Mr. Canales is president of T&B and signed the Distributor Agreements in that capacity. The Distributor Agreements generally, and the arbitration provision specifically, include just one signature line clearly identifying the corporate entity as the signatory.[3] Mr. Canales' name appears only as a signature on behalf of a corporate entity; Mr. Bardzik signed only as a witness.

The only other place Plaintiffs' names appear in the Distributor Agreements is in the "Personal Guaranty" documents. Lin. Decl. 2, p. 25-9. Defendants attempt to assign great significance to Plaintiffs' signatures of the guaranties. The guaranties, however, merely serve to underscore the nature and purpose of the Distributor Agreements: Plaintiffs' signatures merely purport to confirm a commitment to ensure that *T&B* fulfills *its* contractual promises. The reference in the Personal Guaranties to Plaintiffs being "subject to" the arbitration provision cannot magically transform them into parties to the Distributor Agreements or their arbitration provisions, which they did not sign or adopt as their contracts.

In fact, the agreement makes over three hundred references to the "Distributor," identified clearly as T&B. The arbitration provision makes clear that it concerns and applies to claims made by *the Distributor* against the "Company" or vice versa. The arbitration provision makes no reference to either Mr. Canales or Mr. Bardzik in their individual capacities. Like all corporate entities, T&B has the capacity to both bring suit, and be sued, in its corporate capacity. See, e.g. Dickey v. Inspectional Servs. Dep't of Bos., 482 Mass. 1003, 1004 (2019); Brown Rudnick Berlack Israels LLP v. Brooks, 311 F. Supp. 2d 131, 134 (D. Mass. 2004). But the claims raised in this action are not between T&B and the Defendants.

---

[3] Defendants refer to "Arbitration Agreements," but these documents were really components of the Distributor Agreements rather than separate agreements.

Corporations have the power to form contracts and bind themselves to the commitments in them, but they do not have the power to bind individuals to those contracts. Because neither Mr. Canales nor Mr. Bardzik signed the Distributor Agreements or agreed to arbitration in their individual capacities, they cannot be bound to arbitrate. Bros. Bldg. Co. of Nantucket v. Yankow, 56 Mass. App. Ct. 688, 693 (2002) ("It is well settled that 'arbitration is a remedy created by statute which limits its availability to the parties to an arbitration agreement'"), quoting Rae F. Gill, P.C. v. DiGiovanni, 34 Mass. App. Ct. 498, 503 (1993). If T&B brought a contract claim against Defendants, and in deciding the claim an arbitrator sought to bind Mr. Canales and/or Mr. Bardzik, it would be a clear overreach of the arbitrator's authority. Lumber Liquidators, Inc. v. Sullivan, No. 10-11890-NMG, 2011 U.S. Dist. LEXIS 138323, at *8 (D. Mass. Aug. 10, 2011).

*b. The arbitration provision cannot be enforced against non-signatories in this case.*

Federal courts have been very hesitant to enforce arbitration provisions against non-signatory parties, for good reason. InterGen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003). In rare circumstances, "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id., quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000), This is not such a case. Far from seeking enforcement of any part of the Distributor Agreements, or relying on their provisions, Plaintiffs pursue their individual claims on the basis that the Distributor Agreements must be entirely invalidated because the practical reality of Plaintiffs' work makes clear they are employees under Massachusetts law. InterGen N.V., 344 F.3d at 145.

To the extent that Defendants suggest Plaintiffs should be bound to arbitrate on the basis of an alter ego theory, courts have consistently rejected such arguments. In Brothers Bldg. Co. of Nantucket v. Yankow, the Massachusetts Court of Appeals rejected an arbitrator's use of alter ego because, contrary to the arbitrator's finding, the contract "did not provide that the contractor *plus all other entities that were somehow related to the contractor* were entering into the agreement." 56 Mass. App. Ct. 688, 693-694 (2002) (emphasis added). The Court held that because the non-signatory party was "not a party to the agreement and *did not otherwise agree to have its alleged alter ego status determined by the arbitrator*," the arbitrator was not permitted to reach that result. Brothers Bldg. Co. of Nantucket v. Yankow, 56 Mass. App. Ct. 688, 694-695 (2002) (emphasis added).

To the extent that Defendants argue the parenthetical language "including its owner or owners" following the term "DISTRIBUTOR" in the arbitration provision should extend to Plaintiffs in their individual capacities, at best such an interpretation creates an ambiguity. "Under a long-established principle of contract law, ambiguities in a contract are construed against the drafter." Hovagimian v. Concert Blue Hill, LLC, 488 Mass. 237, 242 (2021). Where "the DISTRIBUTOR" is defined throughout the Distribution Agreements as T&B, and no signature line exists for Plaintiffs in their individual capacities, it would be inherently unfair to expand the definition of "DISTRIBUTOR" based solely on this parenthetical.

Plaintiffs' signatures of the "Personal Guaranty" documents should not bind them to arbitrate this case either. To the extent those documents have any validity – and for the reasons given below, they should be invalidated under Massachusetts law – they apply to the limited extent that Plaintiffs would be liable for a purported failure to ensure that T&B fulfills its

7

corporate obligations. Plaintiffs signed as guarantors, but not generally in their individual capacities.

**II. Under the circumstances of this case, the Distributor Agreements constitute "Special Contracts" in violation of the Massachusetts Wage Act and the arbitration provisions are otherwise unenforceable under Massachusetts law.**

*a.      The Distributor Agreements' invalidity is for the Court to decide, not an arbitrator.*

"It is well settled in both commercial and labor cases that whether parties have agreed to "submi[t] a particular dispute to arbitration" is typically an "'issue for judicial determination.'" Granite Rock Co., supra 561 U.S. at 296, quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) and John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964). "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Id., citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary . . . principles that govern the formation of contracts"). Massachusetts law governs concerning the validity of the contract Defendants seek to enforce, including the arbitration provision. See Distributor Agreements, at ¶ 20.11; see also Bekele v. Lyft, Inc., 918 F.3d 181, 185 (1st Cir. 2019).

Defendants point to Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 448-49 (2006), for the premise that a challenge to the validity of the Distributor Agreements must be subjected to arbitration. That case, however, "simply applied the requirement in § 2 of the FAA that courts treat an arbitration provision as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010). In Buckeye Check Cashing, Inc., the party seeking to avoid arbitration

claimed that just one aspect of the contract rendered the entire contract invalid and did not question the validity of the arbitration provision itself. Id.  By contrast, the Distributor Agreements in this case – *including the arbitration provisions* – are invalid in their entirety because their very purpose violates Massachusetts law.[4]  The severability of the arbitration provision is beside the point.

*b. The Distributor Agreements constitute special contracts in Violation of M.G.L. c 149, § 148.*

The Massachusetts Wage Act, M.G.L. c. 149, § 148 (the "Wage Act"), makes it illegal for any person or entity "by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty."  This prohibition was "intended to thwart … schemes" to avoid compliance with the statute. Machado v. System4 LLC, 471 Mass. 204, 217 (2015).  Both the Supreme Judicial Court of Massachusetts and the First Circuit have recognized the strong public policy interests that underpin the Wage Act. Rueli v. Baystate Health, Inc., 835 F.3d 53, 60 (1st Cir. 2016); Melia v. Zenhire, Inc., 462 Mass. 164 (2012).  Because of the strong public policy interests implicated in such claims, even a voluntary agreement may constitute an impermissible special contract under the Wage Act. See, e.g. Camara v. AG, 458 Mass. 756 (2011).

In Machado, the Supreme Judicial Court rejected the contention that an arbitration provision violated the "special contract" clause of the Wage Act simply because it did not explicitly mention the Wage Act.  Here, however, the Distributor Agreements as a whole (including the arbitration provisions) constituted illegal special contracts.  Unlike in Machado, where the plaintiffs had signed franchise agreements directly with the defendants, Defendants created a comprehensive scheme involving a special corporate entity set up at their direction with

---

[4] They are also invalid because they were induced by fraud, as Plaintiffs have asserted in a separate count of the Complaint.  The same analysis applies to the fraud claim.  Here, in contrast with the parties seeking to avoid arbitration in Buckeye Check Cashing, Inc., the entire contract – including the arbitration provision – was procured through fraud.

whom they then contracted.  The problem here is not the omission of a certain word but the entire purported contractual arrangement.

"In evaluating a motion to compel arbitration, the judge must take the allegations in the plaintiff's complaint as true." Ferrier v. Comcast Corp., 99 Mass. App. Ct. 1101 (2020) (citing Dartmouth v. Greater New Bedford Regional Vocational Tech. High Sch., 461 Mass. 366, 373-374 (2012).  Plaintiffs' claims, as set forth in their complaint and the attached affidavit, are that Defendants misclassified them as independent contractors when, in fact, the Plaintiffs were employees of the Defendants.  As part of that scheme, Defendants coerced Plaintiffs, a pair of delivery drivers with relatively little business experience, into forming a corporate entity and then signing the Distributor Agreements on behalf of that corporate entity.  The corporate entity, and Distributor Agreements to which it is party, serve no function except to shield Defendants from the provisions of the Wage Act by placing the burden upon Plaintiffs and their straw corporate entity.

The Supreme Judicial Court "has made clear that any attempt by an employer to shift the ordinary costs of doing business to its employees must be met with skepticism and carefully scrutinized." Martins v. 3PD Inc., No. 11-11313-DPW, 2014 U.S. Dist. LEXIS 40638, at *16 (D. Mass. Mar. 27, 2014).  "[A] basic precept underlying the FAA is that arbitration is a matter of consent, not coercion." Ascend Robotics LLC v. Carcharadon, LLC, No. 1:20-cv-10934-ADB, 2021 U.S. Dist. LEXIS 22172, at *18 (D. Mass. Feb. 5, 2021) (quoting Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017)).  Here, Defendants used their power as employers, and their vastly superior resources, to coerce Plaintiffs into creating a corporate entity, which then contracts with Defendants to perform the exact services Plaintiffs performed as employees.  The corporate entity serves no legitimate function except to create an illusory barrier between the Plaintiffs and

Defendants. This is precisely the sort of special contract which the Wage Act seeks to prohibit, and which is invalid under that act. Because the contract is invalid in its entirety, the arbitration provision which Defendants rely on is invalid, and the Court should not enforce it.

*c. The arbitration provision's waiver of rights to proceed on a "multi-plaintiff basis" violates Massachusetts law.*

Massachusetts law "creates a private right of action by which a person 'may institute and prosecute in his own name and on his own behalf'" Wage Act claims, and "precludes the contractual waiver of certain rights under those statutes" including but not limited to the right to sue on a class basis. Waithaka, supra 966 F.3d at 29 (1st Cir. 2020). The arbitration provision at issue in this case contains a waiver directly contrary to Massachusetts law. As a result, Plaintiffs cannot be compelled to arbitrate under Massachusetts law. Id. at 33, citing Machado, supra 471 Mass. at 518.

*d. To the extent that the "Personal Guaranty" documents purport to bind Plaintiffs generally in their individual capacities to the arbitration provision, those documents are unconscionable under Massachusetts law and fail for lack of consideration.*

Enforcing the arbitration provision on Mr. Canales and Mr. Bardzik in their personal capacities is both procedurally and substantively unconscionable under Massachusetts law, and the court should not enforce it. "[A]rbitration is a matter of contract … and for the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists." Campbell v. General Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005). Under Massachusetts law,

> [t]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).

Machado, supra 471 Mass. at 218 (internal citations and quotation marks omitted).

"Procedural unconscionability is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C., 77 F. Supp. 3d 237, 245 (D. Mass. 2015). "Because there is no clear, all-purpose definition of unconscionable … unconscionability must be determined on a case by case basis." Skirchak v. Dynamics Research Corp., 508 F.3d 49, 59 (1st Cir. 2007) (internal citations and quotation marks omitted). In determining whether a contract is unconscionable, courts "consider such factors as the real and voluntary meeting of *the minds of the contracting party*: age, *education, intelligence, business acumen and experience*, relative bargaining power, *who drafted the contract*, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [or] whether there were alternative sources of supply for the goods in question." Hopkinton Drug, Inc., supra 77 (emphasis added) (internal citations and quotation marks omitted).

The power imbalances in the instant case are difficult to overstate. Mr. Canales and Mr. Bardzik are two individuals with little to modest business management experience, whereas the Defendants are a multistate conglomerate with the vast resources that includes. Plaintiffs' options at the signing of the contract were limited; the corporate entity they were directed to form relies solely and exclusively on products that Defendants provide, and Plaintiffs had little meaningful choice in signing this contract if they wished to continue doing business with Defendants. Defendants drafted this contract without any input from Plaintiffs. When Plaintiffs did sign the contract, they did so with the (entirely reasonable) understanding that they were doing so on behalf of the corporate entity they form at Defendants direction. Mr. Canales signed only once, as the representative of T&B Dough Boys, Inc. Mr. Bardzik never signed the contract at all.

Only the "Personal Guaranties," single pages buried within these documents, provide even the suggestion that Plaintiffs would be personally bound to these contracts. Indeed, the language of those guarantees suggests that the Plaintiffs were agreeing to uphold the contract on behalf of T&B. They were not fairly on notice that one sentence in the "Personal Guaranties" could transform the arbitration provision in the Distributor Agreements into one applicable to them in their individual capacities for individual claims unrelated to the purported guaranty.

"The issue of substantive unconscionability concerns whether a contract term is overly oppressive to one side." Gertz v. Vantel Int'l/Pearls in the Oyster Inc., Civil Action No. 19-12036-FDS, 2020 U.S. Dist. LEXIS 123473, at *14 (D. Mass. July 14, 2020) (citing Machado v. System4 LLC, 471 Mass. at 218). "The analysis of whether a given contract is unconscionable is a highly fact-specific inquiry." ACI Worldwide Corp. v. Keybank Nat'l Ass'n, Civil Action No. 1:17-cv-10662-IT, 2020 U.S. Dist. LEXIS 37359, at *43-44 (D. Mass. Feb. 28, 2020). "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." Miller v. Cotter, 448 Mass. 671, 679 (2007) (quoting Restatement (Second) of Contracts § 208, comment *a* (1981)).

It would be oppressive for the law to force Plaintiffs to arbitration on the basis of a single subclause buried within this contract. Had Defendants wished to clearly and plainly make Plaintiffs parties to the Distributor Agreements, they could have drafted the contracts differently. Instead, because they were committed to the fiction that Plaintiffs were independent contractors Defendants attempted a deception whereby they slipped in a reference to arbitration in the "Personal Guaranty" documents. Not only was this procedurally unfair, but it was substantively unfair as well: the "Personal Guaranty" documents do not specify any consideration beyond the "good and valuable consideration" boilerplate language because none existed. On the contrary,

Plaintiffs' claims arise from the damages they incurred as a result of Defendants' misclassification schemed – of course they did not benefit from signing the "Personal Guaranty" documents.

**III. Because Plaintiffs qualify as transportation workers for purposes of the Federal Arbitration Act, the FAA cannot be invoked to compel arbitration in this case.**

Section 1 of the Federal Arbitration Act exempts from the Act's coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  In New Prime Inc. v. Oliveira, 139 S. Ct. 532, 535 (2019), the Supreme Court held that a truck driver who had been misclassified as an independent contractor was not required to arbitrate his claims because he qualified for the Federal Arbitration Act's § 1 exception.  Despite Defendants' efforts to portray Plaintiffs as independent business owners, they are primarily truck drivers – they drive trucks conveying Defendants' products (which are in the stream of interstate commerce) to Defendants' customers.

Defendants point to Bissonette v. Lepage Bakeries Park St., LLC, a U.S. District Court decision from Connecticut, to support their contention that Plaintiffs do not qualify for the transportation workers exemption to the Federal Arbitration Act and are therefore bound by the arbitration provision. 460 F. Supp. 3d 191 (D. Conn. 2020).  That case concerned a class of plaintiffs who had entered into Distributor Agreements with Defendants.  The court in Bissonette concluded that the plaintiffs in that case were not transportation workers, and therefore not exempt from the Federal Arbitration Act under the line of cases defining that exemption.

In following New Prime Inc., rather than taking the perspective that produced the decision in Bissonnette, the First Circuit has clearly rejected a "cramped construction of Section 1's exemption for transportation workers" such as that adopted by Bissonette. Waithaka, supra 966 F.3d at 26 (1st Cir. 2020).  In Waithaka, the First Circuit held that "last-mile" Amazon drivers qualified for the transportation workers exception in the FAA despite having been classified as

purported independent contractors. Id.  The work which Plaintiffs engage in daily consists of transporting goods in the stream of interstate commerce, entirely consistent with the work performed by the plaintiffs in Waithaka.

Although it acknowledged that "the parties dispute whether [p]laintiffs' role is sufficiently confined to driving, delivery, and distribution so as to make them 'transportation workers' for purposes of the Section 1 exemption," the Bissonette court placed undue emphasis on the apparent absence of evidence in the record supporting the plaintiffs' argument.  In this case, Plaintiffs have submitted affidavits verifying and adopting the allegations in the Complaint and the Court should credit those factual allegations for purposes of analyzing the question of whether Plaintiffs are transportation workers under the FAA.

Defendants contend that they are in the bread baking business and in the business of "contracting with distributors."  Yet that contention goes straight to the heart of the parties' dispute in this case.  In reality, Plaintiffs were not independent contractors but employees in the transportation aspect of Defendants' business. See Waithaka v. Amazon.com, Inc., 2019 WL 3938053, at *4 (D. Mass. Aug. 20, 2019), affirmed, 966 F.3d 10; see also Rittmann v. Amazon.com, Inc., 383 F. Supp. 3d 1196, 1201 (W.D. Wash. 2019); Veliz v. Cintas Corp., 2004 WL 2452851, at *6 ("Plaintiffs who are personally responsible for transporting goods, no matter what industry they are in, are 'transportation workers' under the FAA exemption.").  Federal law is clear that workers like Plaintiffs qualify for the Section 1 exemption where they deliver goods that are "within the flow of interstate commerce." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001) (citing Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195 (1974)).

The Bissonnette essentially took for granted the language in the Distributor Agreements and assumed that Defendants had delegated to the plaintiffs in that case "all manner of [the]

15

plaintiffs' business operations."  Whereas <u>Bissonnette</u> placed great emphasis on the argument that the Distributor Agreements "do not obligate [the plaintiffs] to perform any services personally" and "grant [the plaintiffs] latitude in managing their business," the reality is that Plaintiffs personally transport Defendants' bread products and have very limited control over the circumstances of their transportation.  Plaintiffs are absolutely "personally indispensable to the flow of goods in a manner akin to a traditional truck driver," to use the <u>Bissonette</u> court's language.  That Defendants have had to hire additional drivers is not dispositive of their work or of their status as independent contractors.  The text of the illegitimate Distributor Agreements should not be invoked to override the reality on the ground, just as it would not override practical realities for purposes of the Massachusetts independent contractor test. M.G.L. c. 149 § 148B.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, compel arbitration should be ***denied***. Plaintiffs should be permitted to continue litigating their claims in this Court.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), the Plaintiffs request the opportunity for oral argument on all issues presented by the Defendants' Motion to Dismiss, or in the Alternative, to Compel Arbitration and the Plaintiffs' opposition thereto.

Respectfully Submitted,

Plaintiffs Margarito Canales and
Benjamin Bardzik, by their attorney:

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf, BBO# 667695
Murphy & Rudolf, LLP
One Mercantile Street, Suite 740
Worcester, MA 01608
P: (508) 425-6330
F: (508) 536-0834
E: brudolf@murphyrudolf.com

## CERTIFICATE OF SERVICE

I, Benjamin C. Rudolf, Attorney for the Plaintiffs in the foregoing matter, hereby certify that on September 10, 2021 I filed the foregoing via the Court's CM/ECF system, which will automatically send a notice of filing to counsel of record.

*/s/ Benjamin C. Rudolf*
Benjamin C. Rudolf