UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARITO V. CANALES and BENJAMIN J. BARDZIK,<br><br>          Plaintiffs,<br>v.<br><br>LEPAGE BAKERIES PARK STREET LLC, CK SALES CO., LLC, and FLOWERS FOODS, INC.,<br><br>          Defendants. | Civil Action No. 1:21-cv-40065<br><br>*LEAVE TO FILE GRANTED ON 10/05/2021* |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO SUPPLEMENT RECORD AND PLAINTIFFS' SUPPLEMENTAL AFFIDAVITS**

Plaintiffs mischaracterize the holding in ***Waithaka v. Amazon.com, Inc***., 966 F.3d 10 (1st Cir. 2020), and argue that ***Bissonnette v. Lepage Bakeries Park St., LLC,*** 460 F.Supp.3d 191 (D.Conn. 2020),[1] is somehow at odds with ***Waithaka, supra*** – it is not. To the contrary, ***Bissonnette*** is entirely consistent with ***Waithaka***. In ***Bissonnette***, the court fully appreciated the need to consider the nature of the business as the First Circuit similarly held in ***Waithaka***: "Consideration of the nature of the hiring company's business carries out the Supreme Court's instruction that we must construe the residual clause of Section 1 consistently with the specific preceding categories of workers – 'seamen' and 'railroad employees'—whose employment contracts are exempt from the FAA". ***Waithaka, supra*** at 23, ***citing Circuit City Stores, Inc. v. Adams,*** 532 U.S. 105, 114-115, 121 S.Ct. 1302 (2001). In ***Bissonnette,*** the court noted that it "does not take issue with" ***Waithaka*** or with the general proposition that a delivery driver responsible for transporting goods that have traveled interstate may well be a "transportation

---

[1] The Defendants in ***Bissonnette*** and this case are the same.

worker" for purposes of the FAA. ***Bissonnette, supra*** at 199. Rather, consistent with both the ***Bissonnette*** record and the facts to which Canales and Bardzik have themselves referenced in their business plans, "Defendants…argue persuasively that Plaintiffs are "more akin to sales workers or managers who are generally responsible for all aspects of a bakery products distribution business" than they are to "traditional transportation workers like a long-haul trucker, railroad worker or seaman." ***Id.*** Based on the undisputed facts, Plaintiffs certainly are not merely delivery drivers.

Plaintiffs argue that this Court should ignore ***Bissonnette*** even though ***Bissonnette*** is directly on point. Plaintiffs argue that in place of ***Bissonnette,*** this Court should develop a record from cases that, except for one, do not involve Defendants Lepage Bakeries or CK Sales, but perhaps even more importantly, do not deal, either directly or indirectly, with whether the applicable arbitration agreements are enforceable and whether distributors are "transportation workers" for the purposes of the FAA's Section 1 exemption. Plaintiffs' cited cases do not consider the FAA at all. ***See Rehberg v. Flowers Baking Co. of Jamestown, LLC***, 162 F. Supp. 3d 490, 501-03 (W.D.N.C. 2016)(decision on motion for summary judgment); ***Coyle v. Flowers Foods Inc.,*** No. CV-15-01372-PHX-DLR, 2016 U.S. Dist. LEXIS 116422, at *3-4 (D. Ariz. Aug. 29, 2016)(decision on motion for summary judgment); ***McCurley v. Flowers Foods, Inc.***, No. 5:16-CV-00194-JMC, 2016 U.S. Dist. LEXIS 146739, 2016 WL 6155740 (D.S.C. Oct. 24, 2016)(decision on Motion for Conditional Certification); ***Medrano v. Flowers Foods, Inc.***, No. 16-350 JCH/KK, 2017 U.S. Dist. LEXIS 102812 (D.N.M. July 3, 2017) (decision on Motion for Conditional Certification); ***Zapata v. Flowers Foods Inc.***, No. 4:16-CV-676, 2016 U.S. Dist. LEXIS 189279 (S.D. Tex. Dec. 20, 2016)(decision on Motion for Conditional Certification); ***Neff***

*v. Flowers Foods, Inc.*, No. 5:15-cv-254, 2019 U.S. Dist. LEXIS 238105 (D. Vt. May 16, 2019)(decision on Motion for Decertification).[2]

In their supplemental affidavits, Plaintiffs now claim they were primarily drivers and nothing more, transporting baked goods in a manner akin to the Amazon delivery drivers described in *Waithaka*. The business plans Plaintiffs developed on their own and which they ignore in both their opposition and supplemental filing, make clear in their own words that Plaintiffs are not primarily drivers. Set forth below in Plaintiffs' own words are the activities in which they acknowledge engaging as part of operating their business:

> 2. Operational Strategy
>
> Based on the proforma for the Amesbury Route, it looks that it can be profitable and have a positive cash flow. We have some accounts that we haven't got in yet but are looking forward to purchasing the route and getting into those stores. They include a market that sells only organics and some cash accounts around the area. The manager of our district John Will, has talked to us and assured us he will help us get into the Organic market in the area plus more.
>
> Our key customers in the Amesbury route include Market Basket Newburyport, Market Basket Rowley, stop and shop Newburyport, and Shaws plus a store called Vermittes. With my experience in Market Basket for 12 years, I know the management in the Market Baskets and I will work with them closely to assure they're getting serviced to the full extent of our business allows. Also, me and Ben will work with our employee to make sure the right product gets ordered, special items get set up for the weekend, and of course, have plenty of buns for the hot and beautiful summer days. We will service each account 5 days a week, and of course, me and my business partner will rotate our days off to service the stores with backstock on the days that we don't service. We will start early in the morning around 2am-3am, to assure we get to the first stop in time, and have enough time in between to service all the accounts on time and on schedule.
>
> We have a part time employee ready to make the jump to running the Amesbury route. He will work 5 days a week, and me and Ben will rotate each week to work Wednesday and Sundays.

---

[2] Plaintiffs also incorrectly cite to *Harper v. Amazon Services, Inc.,* 2021 WL 4075350 (3d Cir.) for the proposition that their allegations result in Massachusetts law somehow supplanting or preempting application of the FAA. It does not. Such a holding would in effect preclude arbitrating virtually any employment matter under the FAA, a result entirely inconsistent with the courts' interpretation of the FAA. *Id.,* at *3.

> Our Mission Statement is the following: T&B Dough Boys Inc will service the customer to the fullest and make sure the customer is 100 percent satisfied and serviced .

Plaintiffs' 2019 Business Plan, **Attachment** to **Linthicum Declaration** [ECF 10-5].

<u>Operational Strategy</u>

> Based on the performance of 7974, it will be our biggest territory when it comes to area, profit, and sales projections. 7974 encompasses parts of Stoneham, Woburn, and Wakefield as well as all of Reading. This is a densely populated area along the 1-95/Route 128 corridor. The financial demographics of the area range from lower income to higher income. Reading in particular is a higher income area, and Stoneham and Wakefield have pockets of upper level income areas. The anchor stores on this route are the Market Baskets in Woburn and Reading. These accounts will be serviced daily. In addition, the route contains two Stop n Shops, a Shaw's, a BJ's Wholesale Outlet, and a Burger King. We will be pushing all of our brands of bread. We will promote regional brands such as Country Kitchen as well as national brands such as Wonder, Nature's Own, and Dave's Killer Bread. Specialty brands such as Canyon Bakehouse will be featured as well.
>
> The president and vice president of T&B Dough Boys Inc as well as the route runner will be going to ALL of the accounts to make the proper introductions. This will be the 5th time that we will be doing this. We will be talking to managers, bread employees, and supervisors to give our assurances that their store will be serviced daily. We will go into details about our experiences and how plan to use our knowledge to improve the sales for these stores. The two anchor stores are high customer volume Market Baskets and should be able to generate much greater sales numbers than they have shown recently. We feel our methods will be able to raise these numbers.

Plaintiffs' Business Plan 2020, **Attachment** to **Linthicum Declaration** [ECF 10-6].

In light of Plaintiffs' prior statements in their business plans, the Court should give their supplemental affidavits short shrift if any weight.  They contradict their prior statements and moreover, the affidavits themselves are internally inconsistent.  As but one example, Canales now claims that on average he devoted 60-70 hours a week performing his job as a distributor, and of that time, he drove 50 hours a week, and spent another 20-30 hours supervising their other employees who were tasked with distributing and merchandising product in the fourth territory. The numbers simply do not add up.  Conveniently, nowhere in the above description of how they

spend their weeks do Canales and Bardzik account for the entrepreneurial activities they perform as acknowledged in their own written business plans.

As consistently indicated in Plaintiffs' business plans, the Distributor Agreement (*See* ECF Documents 10-3, 10-4 and 10-6) Mr. Linthicum's Declaration [ECF10-1], Plaintiffs and their employees must devote significant time in the stores, to place orders, sell, merchandise, and remove out of code product.  It is clear from Mr. Linthicum's Declaration and Plaintiffs' own business plans that less than half of their time is devoted to driving and that the driving is *incidental* to all of their other responsibilities owning and operating a business that included four territories and multiple employees.  The mere fact that a worker is responsible for delivering goods does not defeat "compelling evidence that the worker performs myriad other non-transportation related functions that fundamentally transform the nature of the job description." *Bissonnette,* at 200. "The Court is doubtful that Plaintiffs' role as distributor franchisees is sufficiently analogous to that of early 20th century railroad workers or seamen to warrant a finding that Congress would have envisioned the FAA exception embracing such workers." *Id.*

## CONCLUSION

For the reasons set forth herein as well as in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration, Defendants respectfully request that the Court dismiss this lawsuit and/or stay it and compel Plaintiffs to arbitrate their claims pursuant to the Arbitration Agreements they signed.

Dated:  October 5, 2021

Respectfully submitted,

Lepage Bakeries Park Street, LLC, CK Sales Co., LLC and Flowers Foods, Inc.,

By their attorneys,

 /s/ Frederick B. Finberg
Peter Bennett, Esquire
pbennett@thebennettlawfirm.com
Frederick B. Finberg, Esquire
rfinberg@thebennettlawfirm.com
Pawel Z. Binczyk, Esquire
pbinczyk@thebennettlawfirm.com
THE BENNETT LAW FIRM, P.A.
75 Market Street, Suite 201
Portland, ME  04101
(207) 773-4775

## CERTIFICATE OF SERVICE

I, Frederick B. Finberg, hereby certify that on October 5, 2021, I filed the foregoing via the Court's CM/ECF system. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF) to all counsel of record.

 /s/ Frederick B Finberg
Frederick B. Finberg