UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| MARGARITO CANALES, and<br>BENJAMIN BARDZIK,<br><br>            Plaintiffs<br><br>v.<br><br>LEPAGE BAKERIES PARK STREET LLC,<br>CK SALES CO., LLC and<br>FLOWER FOODS, INC.,<br><br>            Defendants | CIVIL ACTION NO:  1:21-cv-40065-ADB<br>*Leave to File granted 6/6/25* |

## PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

With leave granted on June 6, 2025, Plaintiffs Margarito Canales and Benjamin Bardzik

("Mr. Canales and Mr. Bardzik" or "Plaintiffs") respectfully submit this Sur-Reply to the Reply

filed by Defendants Lepage Bakeries Park Street LLC ("Lepage"), CK Sales, Co., LLC ("CK

Sales"), and Flowers Foods, Inc. ("Flowers Foods") (collectively "Defendants") concerning their

Motion for Summary Judgment submitted in this case.

**A.  The facts of this case bear no resemblance to the delivery route cases on which the Defendants rely.**

As a matter of undisputed fact, the Plaintiffs spend (and have spent throughout the time

period relevant to this case) the majority of their time personally driving trucks delivering the

Defendants' products.[1]  The Defendants hope that the Court will ignore that work, and point to

two cases with very different facts in support of their argument that the Plaintiffs do not provide

---

[1] Consolidated Statement of Facts at ¶ 48.

them with a "service."  In *Cook*, the individual plaintiff claiming misclassification "functioned as a manager for [his corporate entity], and did not provide driving services to [the defendants] in an individual capacity." *Cook v. Estes Express Lines*, Corp., D. Mass., No. 1:16-CV-11538-RGS (Apr. 12, 2018) (Stearns, J.).  The same was true in *Debnam*, where the individual plaintiff's work "involved far more than his personal services." *Debnam vs. FedEx Home Delivery*, D. Mass., No. CIV.A. 10-11025-GAO (Sept. 27, 2013) (O'Toole, J.).  The individual plaintiff in *Debnam* owned nine delivery routes, each of which was operated by an employee of his who performed the driving. *Id*.  By contrast, this case involves two individual plaintiffs, who personally drive and deliver along three routes.  That the Plaintiffs both drive full-time, and spend the majority of their working time doing so, makes a critical difference. See, e.g., *DaSilva v. Border Transfer of MA, Inc.*, 377 F. Supp. 3d 74, 87 (D. Mass. 2019) (Saris, J.) (distinguishing *Debnam*).

Throughout the time period relevant to this case, the Plaintiffs have operated no more than four routes at a time.  The Plaintiffs agreed to operate three initially, because the Defendants gave them no alternative to losing their employment, and have continued to operate those three personally.[2]  The Plaintiffs agreed to take on the fourth route to ensure that their friend Dan Park could have employment.[3]  The "detailed written business plans" the Defendants refer to were prepared by Mr. Canales in that context, after he was told by the Defendants' agent Jake Linthicum that they could not purchase the fourth route without one.[4]  Despite the Defendants'

---

[2] Consolidated Statement of Facts at ¶¶ 82 and 84.

[3] Consolidated Statement of Facts at ¶ 90.

[4] Exhibit K, Margarito Canales Deposition, at 175:12-23.

efforts to mischaracterize it, the work the Defendants perform personally consists of the same work they were doing before they entered into the "independent distributor" agreements.[5]

The Defendants' assertion that whether the Plaintiffs serve the general public "has no bearing" on the threshold issue completely misrepresents the Supreme Judicial Court's opinion in *Patel v. 7-Eleven, Inc*, 494 Mass. 562, 571 (2024). Explicitly calling it "significant," the SJC drew a contrast between the Patel plaintiffs, who did not perform labor for 7-Eleven customer accounts at all, and the janitor's labor for the franchisor's customers in *Awuah v. Coverall N. Am., Inc.*, 707 F. Supp. 2d 80, 82, 85 (D. Mass. 2010). *Id.* "Instead, the customers of the franchisees consist of the general public." *Id.* As a matter of undisputed fact, the Plaintiffs in this case perform labor for the Defendants' customer accounts and not for the general public.[6] On the threshold issue of whether the Plaintiffs are performing a service for the Defendants, that should be dispositive.

### B. The Massachusetts Wage Act does not permit the Defendants to recharacterize unlawful deductions from wages as "contingencies" used to calculate commissions.

The Defendants ask the Court to interpret the term "deductions" as synonymous with "contingencies" or "conditions," and argue that the deductions they make from the Plaintiffs' pay simply constitute a component of their commission calculations. No support exists for this proposition in either the plain language of the Wage Act or any of the interpretive case law. On the contrary, the term "deductions" plainly applies to commissions in the same way it applies to any other form of wage. Only "allowable or authorized" deductions can be made from commissions, and the deductions the Defendants make qualify as neither. M.G.L. c. 149 § 148.

---

[5] Consolidated Statement of Facts at ¶ 89.

[6] *See* Consolidated Statement of Facts at ¶¶ 86-100.

That the Plaintiffs signed a contract designed to avoid the Defendants' obligations under the Wage Act does not make the deductions "allowable or authorized." Even when an arrangement to deduct wages can be characterized as "voluntary," it violates the Wage Act unless the deduction qualifies as a valid "set-off" under the statute. *Camara v. Attorney Gen.*, 458 Mass. 756, 763 (2011). The Defendants attempt to spin the deductions at issue in this case as merely part of the commission calculations because they know they cannot establish a valid "set-off." But the case law to which they cite does not support their premise.

The Defendants quote *Klauber v. VMware, Inc.*, 80 F.4th 1, 11 (1st Cir. 2023), for the well-established concept that a commission can be a wage when it can be calculated arithmetically after applying "the applicable formulas and deductions and the total from which the deductions would be taken." *Klauber*, quoting *Wiedmann v. The Bradford Grp., Inc.*, 444 Mass. 698, 708 (2005). They then attempt to recharacterize the deductions at issue in this case as mere "dependent contingencies" that must be met before the wages can be due and payable. Reply at p. 6, citing *Ellicott v. Am. Capital Energy, Inc.*, 906 F.3d 164, 169 (1st Cir. 2018). The holding of *Ellicott* makes very clear that "contingencies" in this context refers to conditions outside the employer's direct control. The commission in *Ellicott* was only due and payable if a particular project was profitable, the client had paid the employer, and the installation (of a solar energy system) was complete. *Id*.

Here, the only contingency upon which payment of the Plaintiffs' wages depend is whether the Defendants' customer stores make their weekly payments to the Defendants for the bread products the Plaintiffs deliver. The Defendants' weekly deductions for the Plaintiffs' territory payment, and such others as the unilaterally fixed "administrative fee" and "warehouse

fee" do not qualify as contingencies.[7]  They are deductions that violate the Wage Act, because they are attempts to pass off the cost of doing business that are only "authorized" in the sense that the Defendants required the Plaintiffs to sign an illegal special contract. See *Martins vs. 3PD Inc.*, D. Mass., No. CIV.A. 11-11313-DPW (Mar. 27, 2014) (Woodlock, J.) (finding that "administrative fee" and other deductions were recoverable damages under the Wage Act); see also *Pineda vs. Skinner Servs., Inc.*, D. Mass., No. CV 16-12217-FDS (Aug. 8, 2019) (Saylor, J.).

**C.** **The Defendants' have not met their summary judgment burden concerning their failure to pay the Massachusetts minimum wage.**

As the party moving for summary judgment, the Defendants bear the burden of demonstrating the absence of a material fact dispute concerning each claim they ask the Court to dismiss. *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000).  Yet the Defendants' argument in their motion rests solely on the contention that the Plaintiffs paid themselves a fixed weekly salary out of the funds the Defendants paid them, and that salary exceeded the minimum wage. The Defendants cannot take credit for paying the minimum wage just because they may have paid the Plaintiffs enough in a prior week to cover payments for the following week: as the Defendants concede, the requirement to pay minimum wage is based on weekly hours worked and weekly wages paid.  In their Opposition, the Plaintiffs identified evidence in the record indicating that (accounting for deductions that violated the Wage Act) the Defendants paid them an amount less than minimum wage during at least two weeks, "and likely more."

Contrary to the Defendants' contention in their Reply, however, the Plaintiffs do not concede that the Defendants' liability for minimum wage violations is limited to those two weeks.  Defendants have failed to bear their initial burden of showing the absence of a material

---

[7] *See* Plaintiffs' Exhibits S and T.

fact dispute as to the remaining weeks.  They are not entitled to summary judgment simply because they make the general assertion that the salary the Plaintiffs took from their business entities (which is drawn from, but does not on a weekly basis correspond to, the amounts the Defendants pay them) exceeded the minimum wage.  In fact, the Plaintiffs continue to work for (and be paid by) the Defendants as of the date of this filing.  The scope of the Plaintiffs' damages for this count will be the Plaintiffs' burden to bear at trial, not an issue to be resolved at summary judgment.

### D. The Defendants' interpretation of M.G.L. c. 151 § 1A(8) lacks support whether or not the statute is preempted by federal law.

The Defendants take the position that in enacting M.G.L. c. 151 § 1A(8), the Massachusetts legislature intended to explicitly incorporate federal regulation over truck drivers pursuant to the federal Motor Carrier Act (MCA), yet also intended to define "truck" more broadly than federal regulation.  According to the Defendants, whereas the MCA overtime exemption applies to drivers commercial motor vehicles weighing more than 10,000 pounds, the Massachusetts overtime exemption is "broader in scope" because it applies simply to drivers of any "trucks."  The only authority the Defendants cite for this distinction is an Opinion Letter issued by the Massachusetts Department of Labor in 2009. *See* Defendants' Memorandum, p. 17 at n. 12.  Yet that Opinion Letter actually states precisely the opposite: "The inclusion of the word truck in the Massachusetts statute creates a **narrower** exemption than does the language of the Fair Labor Standards Act motor carrier exemption."[8]

Now that Congress has created a small-vehicle exception to the federal exemption, it would be a perverse outcome for the Massachusetts exemption to be interpreted as broader.  It

---

[8] Opinion Letter, available at https://www.mass.gov/doc/mw-opinion-09-09-09/download (emphasis added).

would be more logical to interpret M.G.L. c. 151 § 1A(8) as consistent with federal law, especially given its explicit reference to the MCA, or even more favorable to the employee.

Lastly, but not least, the Toyota Camrys Mr. Canales has used in performing his delivery work for the Defendants do not in any event qualify as "trucks" for purposes of the Massachusetts exemption.  The Opinion Letter makes that very clear.  The Defendants have failed to rebut Mr. Canales' testimony by affidavit that in addition to driving the larger trucks for delivery purposes he also has driven his personal car.[9]

Respectfully Submitted,

Plaintiffs Margarito Canales and
Benjamin Bardzik,

By their Attorneys:

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf, BBO# 667695
Sarah H. Varney (BBO# 710319)
Rudolf, Smith, Griffis, & Ruggieri, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
P: (508) 425-6330
F: (508) 536-0834
rudolf@rudolfsmith.com
varney@rudolfsmith.com

Dated: June 13, 2025

---

[9] Consolidated Statement of Facts at ¶ 111.

## CERTIFICATE OF SERVICE

I, Benjamin C. Rudolf, Attorney for the Plaintiffs in the foregoing matter, hereby certify that on June 13, 2025, I filed the foregoing via the Court's CM/ECF system, which will automatically send a notice of filing to counsel of record.

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf

Dated: June 13, 2025